USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
FILED: FEB 29 2016

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>-against-<br><br>THE DURST ORGANIZATION, INC.; THE HELENA ASSOCIATES, LLC; and FXFOWLE ARCHITECTS, P.C.,<br><br>Defendants. | No. 14 Civ. 2698 (RA)<br><br>**CONSENT DECREE** |

## INTRODUCTION

This Consent Decree is entered into between Plaintiff the United States of America (the "United States") and defendant FXFOWLE Architects, P.C. (the "Architect Defendant" or "FXFOWLE Architects");

WHEREAS, the United States brought this action (the "Action") to enforce provisions of the Fair Housing Act ("FHA"), codified at 42 U.S.C. §§ 3601–3619. Specifically, the United States' complaint in this Action, filed on April 16, 2014, alleges that the Architect Defendant, together with its co-defendants in this action, has engaged in a pattern or practice of discrimination, and has denied rights to a group of persons in a manner raising an issue of general public importance, by failing to design and/or construct the Helena Apartments, a residential apartment complex in Manhattan (the "Helena"), with the features of accessible and adaptive design and construction required by the FHA, 42 U.S.C. § 3604(f)(3)(C);

WHEREAS, the Helena is subject to the accessible design and construction requirements of the FHA, 42 U.S.C. § 3604(f)(3)(c);

A.      **The Architect Defendant**

WHEREAS, FXFOWLE Architects, a New York professional corporation, prepared

certain architectural plans for the Helena and, in that capacity, participated in the design and construction of the Helena;

**B.      Relevant Requirements of the Fair Housing Act**

WHEREAS, the FHA provides that residential buildings with four or more dwelling units, and one or more elevators, designed and constructed for first occupancy after March 13, 1991, are Covered Multifamily Dwellings and must include certain basic features of accessible and adaptive design to make such units accessible to or adaptable for use by a person who has or develops a disability, 42 U.S.C. §§ 3604(f)(3)(C) and (f)(7)(A);

WHEREAS, the accessible and adaptive design provisions of the FHA require that for Covered Multifamily Dwellings: (i) the public use and common use portions of such dwellings are readily accessible to and usable by persons with a disability; (ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by persons with a disability using wheelchairs; (iii) all premises within such dwellings contain the following features of adaptive design: (I) an accessible route into and through the dwelling; (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; (III) reinforcements in bathroom walls to allow later installation of grab bars; and (IV) usable kitchens and bathrooms such that an individual using a wheelchair can maneuver about the space.  42 U.S.C. § 3604(f)(3)(c) (these provisions and features are referred to herein as the "Accessible Design Requirements");

**C.      Conditions at the Helena**

WHEREAS, the Helena is a residential apartment building located at 601 West 57th Street, New York, New York.  The Helena consists of a tower with elevator access and

2

contains five hundred and ninety-five (595) dwelling units, as well as public and common use areas, including a leasing office, laundry facilities, a roof terrace, a children's play room, a fitness center, a tenants' lounge, and storage areas for tenants;

WHEREAS, the United States has inspected the Helena and specifically identified, among other things, the following conditions at the Helena that the United States alleges fail to meet the FHA's Accessible Design Requirements:

- The sign for the leasing office lacks raised letter Braille for persons with visual impairments;

- The reception counter in the leasing office is too high to accommodate persons who use wheelchairs;

- Locations of the grab bars, toilet, and sink in the unisex bathroom in the main lobby interfere with accessibility for persons who use wheelchairs;

- Excessively high thresholds at entrances to individual units and at entrances to individual unit kitchens, bathrooms, and terraces interfere with accessibility routes for persons who use wheelchairs;

- Insufficient clear opening width of bedroom, bathroom, terrace, and closet doors in individual units interferes with access for persons who use wheelchairs;

- Kitchens in individual units lack sufficient width to accommodate persons who use wheelchairs;

- Kitchen ranges, sinks, and refrigerators in individual units lack sufficient clearance for persons who use wheelchairs;

- Insufficient clear floor space within bathrooms in individual units interferes with maneuvering by persons who use wheelchairs;

- Toilets in bathrooms in individual units are too close to adjacent side wall to accommodate persons who use wheelchairs;

- Locations of thermostats, light switches, radiator controls, and kitchen and bathroom electrical outlets in individual units are inaccessible to persons who use wheelchairs;

3

- Excessively high thresholds at entrances to trash rooms and laundry rooms interfere with accessibility for persons who use wheelchairs;

- The force required to operate trash chutes interferes with accessibility for persons with certain disabilities;

- Locations of dryers in the laundry rooms interfere with accessibility by persons who use wheelchairs;

- Excessively high threshold at the door to the children's play room and inoperable automatic opening device interfere with accessibility for persons with certain disabilities;

- Excessive running slope of ramp leading to the roof terrace and excessively high threshold at the roof terrace door interfere with accessibility for persons who use wheelchairs;

- Excessively high threshold at one entrance to the fitness center and lack of any accessible route at the other entrance interfere with accessibility for persons who use wheelchairs;

- Excessively high threshold at the door to the tenants' storage area interferes with accessibility for persons who use wheelchairs; and

- The door to the television room in the tenants' lounge is too narrow for persons who use wheelchairs.

**D.      Consent of the Parties to Entry of this Decree**

WHEREAS, the parties agree that this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3614(a), and further agree that this controversy should be resolved without further proceedings and without an evidentiary hearing or a trial;

WHEREAS, the parties agree to the entry of this Consent Decree.

**It is hereby ORDERED, ADJUDGED, and DECREED:**

## I. GENERAL INJUNCTION

1.     FXFOWLE Architects and each of its officers, employees, agents, successors, and assigns, and all other persons in active concert or participation with it, are enjoined from discriminating on the basis of disability as prohibited by the FHA, 42 U.S.C. § 3604.

## II. ACKNOWLEDGEMENTS

2.     With regard to its design of the Helena, FXFOWLE Architects admits and acknowledges that:

> a. FXFOWLE Architects provided certain design services to the Durst Organization, Inc. for the Helena. Specifically included as part of said services, FXFOWLE Architects prepared certain architectural drawings for the dwelling units and supplied certain specifications for the dwelling units that were used by the construction contractors to construct the Helena.
>
> b. As built and constructed, certain features of the Helena did not satisfy the accessibility standards established under the Fair Housing Act Guidelines promulgated by the U.S. Department of Housing and Urban Development.

## III. NON-DISCRIMINATION IN OTHER DESIGN AND CONSTRUCTION

3.     For the duration of this Consent Decree, if the Architect Defendant prepares any architectural or site plans, drawing, or blueprints for covered multi-family housing, as defined in the FHA, and said plans, drawing or blueprints are intended to be issued to a contractor for construction purposes, the Architect Defendant shall include on such plans, drawings, or blueprints a statement attesting to compliance with the FHA and one of the following standards (each a "Standard"), where such a single Standard has been used in its entirety (*i.e.*, where every design feature within the Additional Property in question complies with all of the provisions in

5

the particular selected Standard that addresses the FHA requirements): (i) the Guidelines; (ii) a standard designated as an FHA safe harbor by the Department of Housing and Urban Development; or (iii) a recognized, comparable, objective standard of accessibility that has been found by this district court or the Second Circuit to incorporate the requirements of the Fair Housing Act; and the Architect Defendant shall maintain and provide such plans, drawing, or blueprints to the United States upon request.

      4.     During the term of this Consent Decree, the Architect Defendant shall maintain, and provide to the United States upon request, the following information and statements regarding any Covered Multifamily Dwellings intended to be designed, in whole or in part, by it or by any entities in which it has a position of control as an officer, director, member, or manager, or has a ten-percent (10%) or larger ownership share:

    a.  the name and address of the project;

    b.  a description of the project and the individual units;

    c.  the name, address and telephone number of the individual architect(s) who will be signing and sealing the drawings on behalf of the Architect Defendant ("Responsible Architect");

    d.  a statement from each Responsible Architect acknowledging and describing his/her knowledge of and training in the requirements of the Fair Housing Act and the Guidelines, and in the field of accessible site design, and certifying that he/she has reviewed the architectural plans for the project and that the design specifications therein fully comply with the requirements of the Fair Housing Act and a Standard.

      5.     If the architectural plans referred to in Paragraph 4 above are revised by or with the participation of Architect Defendant, and the revisions could have any impact on whether the

dwellings or complex comply with the Fair Housing Act and/or a Standard, the Architect Defendant shall obtain, maintain, and provide to the United States upon request, a statement from the Responsible Architect that all specifications in the revised architectural plans, as pertinent, comply with the requirements of the Fair Housing Act and a Standard.

6.      The Architect Defendant will make its designs for all new construction of Covered Multifamily Dwellings fully compliant with the Accessible Design Requirements, the Americans with Disabilities Act, and the Americans with Disabilities Act Accessibility Standards to the extent applicable to Covered Multifamily Dwellings.  Moreover, with respect to all new construction of Covered Multifamily Dwellings, the Architect Defendant shall make its design(s) for all such construction fully compliant with a Standard where every design feature of the project in question complies with all of the provisions in the particular selected Standard that address FHA requirements.

## IV. PAYMENTS TO AGGRIEVED PERSONS

7.      Within 30 days of entry of this Consent Decree, the Architect Defendant shall deposit in an interest-bearing account the total sum of THIRTY-FIVE THOUSAND DOLLARS ($35,000) for the purpose of compensating any aggrieved persons who may have suffered as a result of the Architect Defendant's allegedly discriminatory housing practices regarding the Helena.  This money shall be referred to as the "Architect Settlement Fund."

8.      The United States shall investigate the claims of allegedly aggrieved persons and shall determine which persons are aggrieved and an appropriate amount of damages that should be paid to each such person.  The United States will inform the Architect Defendant in writing of each of its determinations, together with a copy of a sworn statement or declaration from each aggrieved person setting forth the factual basis of his/her claim.

7

9.     If the Architect Defendant disputes the amount of a payment to an aggrieved person, the Architect Defendant shall, within fourteen (14) days of receiving notice of a determination (a "Determination") from the United States, provide a written objection to the United States, along with any information or documents that they believe may refute the aggrieved person's claim.  The United States shall give due consideration to any objections it receives from the Architect Defendant and shall submit, following any objection, its reconsidered determination (a "Reconsidered Determination") to the Architect Defendant, in writing, setting forth the aggrieved person and the amount that the aggrieved person shall be paid.  If the Architect Defendant disputes the Reconsidered Determination, the Architect Defendant shall file an objection with the Court, which may sustain or overrule the objection.  The Architect Defendant shall, no later than twenty (20) days after receiving a Determination to which no objection has been made, ten (10) days after receiving a Reconsidered Determination to which no objection has been filed with the Court, or ten (10) days after any decision by the Court overruling a filed objection, whichever is earliest, deliver to the United States checks payable to aggrieved persons in the amounts identified by the United States.  In no event shall the aggregate of all such checks exceed the amount of the Architect Settlement Fund, including accrued interest.  No aggrieved person shall be paid until he/she has executed and delivered to the United States the release at Appendix A.

10.    In the event that less than the total amount in the Architect Settlement Fund including accrued interest is distributed to aggrieved persons, and after the United States determines that no further aggrieved persons will be identified, the remainder of the funds in the Architect Settlement Fund shall be distributed to a qualified organization(s) mutually agreed upon by the United States and the Architect Defendant, subject to the approval of the Court, for the purpose of conducting fair housing enforcement-related activities in New York City.  Before

selecting the qualified organization(s), the Architect Defendant will obtain a proposal from the organization(s) on how the funds will be used consistent with the above-stated purpose, submit such proposal to the United States, and consult with and obtain the non-objection of the United States. The United States and the Architect Defendant may request modification of the proposal before approving the organization(s). The parties shall thereafter seek approval from the Court to distribute the remaining funds to the qualified organization(s). The Architect Defendant shall distribute the funds in a manner directed by the Court after the United States informs the Court that no further aggrieved persons will be identified.

## V. CIVIL PENALTY

11. Within 30 days of the date of the entry of this Consent Decree, the Architect Defendant shall pay a civil penalty of THIRTY THOUSAND DOLLARS ($30,000) pursuant to 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest. The Architect Defendant shall pay said sum by submitting a check made payable to the "United States of America" to counsel for the United States.

## VI. EDUCATIONAL PROGRAM

12. Within thirty (30) days of the entry of this Consent Decree, the Architect Defendant shall designate, through a writing submitted to the United States, a member, officer, or employee to serve as its Coordinator for Accessibility Education ("Coordinator"). For the duration of this Consent Decree, the Architect Defendant's Coordinator shall be responsible for overseeing the responsibilities of the Architect Defendant set forth below in Paragraphs 13 through 16, and shall be available to employees of the Architect Defendant to answer accessibility-related questions or direct them to accessibility-related resources. At any time, through a writing submitted to the United States, the Architect Defendant may designate another member, officer, or employee as its Coordinator. At the time a Coordinator is designated, the

9

Architect Defendant shall notify each of its current employees, in writing, of the person designated, as well as the Coordinator's role and responsibilities.

13.    Within thirty (30) days of the entry of this Consent Decree, the Architect Defendant shall  provide a copy of this Consent Decree to all its current employees who have responsibilities involving building design ("Architectural Employees"), as well as to any other individuals or entities (*e.g.*, firms) that are involved in the design of any Covered Multifamily Dwellings as the Architect Defendant's agent ("Agent"[1]), and secure the signed statement from each Architectural Employee and Agent acknowledging that he, she, or it has received and read the Consent Decree, and has had an opportunity to have questions about the Consent Decree answered.  This statement shall be substantially similar to the form of Appendix B.

14.    During the term of this Consent Decree, any new Architectural Employee of the Architect Defendant who will be involved in the design of Covered Multifamily Dwellings, as well as any Agent that will be involved in the design of Covered Multifamily Dwellings, shall, within 30 days after the date he/she commences an agency or employment relationship with the Architect Defendant, be given a copy of this Consent Decree by the Architect Defendant, and the Architect Defendant shall require each such new employee or Agent to sign a statement, acknowledging that he, she, or it has received and read the Consent Decree, and has had an opportunity to have questions about the Consent Decree answered.  This statement shall be substantially similar to the form of Appendix B.

15.    In lieu of providing Architectural Employees or Agents listed in Paragraphs 13 and 14 above with copies of the Consent Decree as required therein, the Architect Defendant may provide its Architectural Employees or Agents with a summary of the Consent Decree,

---

[1]    It is understood and agreed that consultants retained by the Architect Defendant to render engineering or other design services shall not be considered an agent unless said consultant has the authority to act on the Architect Defendant's behalf.

designed to provide personnel with information relevant to their positions. The Architect Defendant may only provide such summaries in lieu of copies of the Consent Decree with the United States' advance written approval of the form and content of any proposed summary, which approval shall not be unreasonably withheld.

16. The Architect Defendant shall also ensure that it and its architect employees as well as any Agents who are involved in the design of any Covered Multifamily Dwellings have a copy of, are familiar with, and personally have reviewed, the Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472 (1991), and the United States Department of Housing and Urban Development, Fair Housing Act Design Manual, A Manual to Assist Builders in Meeting the Accessibility Requirements of the Fair Housing Act (August 1996, Rev. April 1998).

17. Within 180 days of the date of entry of this Consent Decree, the Architect Defendant and all of its architect employees whose duties, in whole or in part, involve or will involve supervision over the design of Covered Multifamily Dwellings, as well as any entities (e.g., firms) acting as the Architect Defendant's agent that will be involved in the design of Covered Multifamily Dwellings, shall undergo training on the design and construction requirements of the Fair Housing Act. The training shall be conducted by a qualified individual approved by the Department of Justice, which approval shall not be unreasonably withheld or delayed (the "Trainer"); and any expenses associated with this training shall be borne by the Architect Defendant. The Architect Defendant shall provide to the United States, 30 days before the training, the name(s), address(es) and telephone number(s) of the trainer(s); and copies of the training outlines and any materials to be distributed by the trainers. The Architect Defendant shall provide to the United States, 30 days after the training, certifications executed by all covered employees and entities confirming their attendance, in a form substantially equivalent to Appendix C.

11

## VII. NOTIFICATION AND DOCUMENT RETENTION REQUIREMENTS

18. Within 180 days after the date of entry of this Consent Decree, the Architect Defendant shall submit to the United States the executed certifications and statements required by Paragraphs 13, 14, and 17 of this Consent Decree.

19. Thereafter, during the term of this Consent Decree, the Architect Defendant shall, on the anniversary of the entry of this Consent Decree, submit to the United States any additional signed statements required by Paragraph 17 of this Consent Decree.

20. For the duration of this Consent Decree, the Architect Defendant shall advise the United States in writing within 15 days of receipt of any written administrative or legal fair housing complaint regarding any property designed by it, or against any employees of the Architect Defendant working at or for any such property, alleging discrimination on the basis of disability in housing under federal law. Upon reasonable notice, the Architect Defendant shall also provide the United States all information in its possession that the United States may reasonably request concerning any such complaint. The Architect Defendant shall also advise counsel for the United States, in writing, within 15 days of the resolution of any complaint.

21. For the term of this Consent Decree, the Architect Defendant is required to preserve all records in its possession related to this Consent Decree for the Helena and any other Covered Multifamily Dwellings designed by it during the duration of this Consent Decree. Upon reasonable notice to the Architect Defendant, representatives of the United States shall be permitted to inspect and copy any records of the Architect Defendant bearing on compliance with this Consent Decree at any and all reasonable times, provided, however, that the United States shall endeavor to minimize any inconvenience to the Architect Defendant from such inspections.

## VIII. DURATION OF CONSENT DECREE AND TERMINATION OF LEGAL ACTION

22. This Consent Decree shall remain in effect for three (3) years following entry of this Consent Decree by the Court. By consenting to entry of this Consent Decree, the parties agree that in the event that the Architect Defendant engages in any future conduct occurring after entry of this Consent Decree that leads to a determination of a violation of the FHA, such conduct shall constitute a "subsequent violation" pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii).

23. The Complaint in this action is hereby dismissed as to the Architect Defendant without prejudice to reinstatement in accordance with the next paragraph.

24. The Complaint in this action shall be reinstated as to the Architect Defendant at any time during the term of this Consent Decree if the Court determines that the Architect Defendant has failed to perform, in a timely manner, any act required by this Consent Decree or has otherwise failed to act in conformity with any provision of this Consent Decree.

25. The Court shall retain jurisdiction for the duration of this Consent Decree to enforce the terms of the Consent Decree. The United States may move the Court to extend the duration of the Consent Decree or in the interests of justice. The duration of the Consent Decree also may be extended by the mutual written agreement of the United States and the Architect Defendant.

26. The United States and the Architect Defendant shall endeavor, in good faith, to resolve informally any differences regarding interpretation of and compliance with this Consent Decree prior to bringing such matters to the Court for resolution. However, in the event of a failure by the Architect Defendant to perform, in a timely manner, any act required by this Consent Decree or otherwise for their failure to act in conformance with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to

have been performed, and an award of any damages, costs, and reasonable attorney's fees which may have been occasioned by the violation or failure to perform.

27.   Upon termination of this Consent Decree, the United States releases the Architect Defendant, and each of its employees, agents, successors, and assigns and all other persons acting in concert or participation with it, from claims by the United States regarding alleged failures, as of the date of entry of this Consent Decree, to design the Helena in accordance with the FHA, including all of the claims alleged in the Action, except for matters referred by the Department of Housing and Urban Development pursuant to 42 U.S.C. § 3612(o). Provided, however, that the Architect Defendant is not released from any claims by the United States concerning any Covered Multifamily Dwellings other than the Helena, including any claims regarding previously designed dwellings and any claims regarding current or future designed dwellings. Nor is the Architect Defendant released from claims, if any, regarding FHA violations at the Helena other than failures to design those properties as of the Effective Date of this Consent Decree as required by the FHA.

28.   Upon the expiration of the Consent Decree and all obligations thereunder, the United States shall seek an order dismissing the claims in the Complaint against the Architect Defendant with prejudice.

## IX. TIME FOR PERFORMANCE

29.   Any time limits for performance imposed by this Consent Decree may be extended by the mutual written agreement of the United States and the Architect Defendant.

14

## X. MISCELLANEOUS

30.   The United States and the Architect Defendant will each bear its own costs and attorney's fees associated with this litigation.

31.   The United States and the Architect Defendant understand and agree that this Consent Decree and the appendices thereto contain the entire agreement between them, and that any statements, representations, promises, agreements, or negotiation, oral or otherwise, between the parties or their counsel that are not included herein shall be of no force or effect.

The undersigned apply for and consent to the entry of this Consent Decree:

*For the United States*:                                    *For the Architect Defendant*:

PREET BHARARA                                      ZETLIN & DE CHIARA LLP
United States Attorney

By: _____              By: _____
LI YU                                                            CAROL J. PATTERSON
JESSICA JEAN HU                                      801 Second Avenue
JACOB LILLYWHITE                                   New York, New York 10017
Assistant United States Attorneys               Tel. No. (212) 682-6800
86 Chambers Street, 3rd Floor                    Fax No. (212) 682-6861
New York, New York  10007                       cpatterson@zdlaw.com
Tel. Nos. (212) 637-2734/2726/2639
Fax Nos. (212) 637-2686/2750
Li.Yu@usdoj.gov
Jessica.Hu@usdoj.gov
Jacob.Lillywhite@usdoj.gov


SO ORDERED:

_____
HON. RONNIE ABRAMS
UNITED STATES DISTRICT JUDGE

2/29/16

15

## APPENDIX A

## RELEASE FORM

In consideration of the payment of the sum of _____ dollars ($_____), pursuant to the Consent Decree entered in *United States of America v. The Durst Organization, Inc., et al.*, 14 Civ. 2698 (RA) (S.D.N.Y.), I hereby release _____ from any and all liability for any claims, legal or equitable, I may have against them arising out of or related to the issues alleged in the above-styled action.

I fully acknowledge and agree that this release of the above-named parties shall be binding on my heirs, representatives, executors, successors, administrators, and assigns.

I hereby acknowledge that I have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.


_____
(Signature)


_____
(Print name)


_____
(Date)

**APPENDIX B**

**ACKNOWLEDGMENT OF RECEIPT OF CONSENT DECREE**

I _____, am an employee of _____ and my duties include _____. I have received and read a copy of the Consent Decree, or a summary thereof, in *United States of America v. The Durst Organization, Inc., et al.*, 14 Civ. 2698 (RA) (S.D.N.Y.), and have been given instruction on (1) the terms of this Consent Decree, (2) the requirements of the Fair Housing Act, particularly related to the Act's design and construction requirements, and (3) my responsibilities and obligations under the Consent Decree and the Fair Housing Act.  I have had all of my questions concerning the Consent Decree answered to my satisfaction.


_____, 20___


_____
Employee Signature

**APPENDIX C**

**CERTIFICATION OF FAIR HOUSING TRAINING**

On _____, I attended training on the federal Fair Housing Act, including its requirements concerning physical accessibility for persons with disabilities.  I was also instructed as to the rental policies and procedures, including the nondiscrimination, complaint, and reasonable accommodation policies of the Fair Housing Act.  I have had all of my questions concerning the Fair Housing Act answered to my satisfaction.

_____
Employee Signature


_____
Print Name


_____
Date